## FERDINAND E. HALLE

·v.

## THE NATIONAL PARK BANK OF NEW YORK.

*Filed at Ottawa January 18, 1892.*

1. TRUST—*collateral securities.* A gave his three accommodation notes to B, who, being unable to meet them, made a bill of sale to A for a lot of merchandise and fixtures then in the possession of A, as security for the payment of the notes, which had been discounted and indorsed to purchasers for value. A gave B a receipt for the bill of sale as being received in security for the notes. It was *held,* that A held the merchandise and fixtures in trust for the payment of the notes, and that parol evidence was not admissible to show that a trust was not thereby intended.

2. Collateral securities or pledges given by a debtor to his surety are regarded as trusts for the better security of the creditor's debt, which a court of equity will enforce. The creditor is entitled to the benefit of such securities or pledges, and to have them applied in payment of his debt.

3. SAME—*mixing with private funds—right of cestui que trust to follow.* Where a trustee sells the trust property to an innocent purchaser, who has no notice of the trust, and applies the purchase money to his own private use and mixes the same with his private funds, the *cestui que trust* may follow the trust fund· and claim every part of the blended property, unless the trustee can identify his own.

4. SAME—*mixing with private funds—jurisdiction of court of chancery.* A trustee can not defeat the jurisdiction of a court of chancery to enforce the application of the trust fund to the purpose of the trust, by appropriating that fund to his own private use, and thereby relegate, the *cestui que trust* to a court of law, there to recover the value of the original trust estate.

5. SAME—*created by conversion of goods deposited in trust.* Where a party takes a bill of sale of a stock of merchandise in trust to sell, and from the proceeds to pay certain notes given by him to the vendor as accommodation paper, and agrees to pay such notes from the proceeds of the sale, the notes received by him for the goods sold will constitute a trust fund in favor of the holder of the accommodation notes, and a bill will lie in favor of the holders to reach, first, the trust property itself—the notes; and if that can not be done for the reason that the trustee has collected such sale notes, then to compel the application of the proceeds according to the terms of the trust. To accomplish this there is no remedy at law.

6. SAME—*cestui que trust entitled to absolute order for payment of trust funds.* On bill to enforce the execution of a trust, when the court establishes the trust, and finds the amount of trust funds in the hands of the trustee, it will be error for the court to refuse to order him to pay over the money in his hands to the *cestui que trust,* and to simply award an execution for the amount. The latter should not be required to take the chance of finding property subject to execution, but is entitled to an absolute order for payment.

7. BAILMENTS—*remedy at law.* Bailments fall within the exception to the general rule that matters of trust and confidence are exclusively cognizable in courts of equity, it being considered that they are remediable in courts of law by the action of assumpsit as for money had and received.

WRIT OF ERROR to the Appellate Court for the First District; —heard in that court on writ of error to the Superior Court of Cook county; the Hon. EGBERT JAMIESON, Judge, presiding.

This action was begun by defendant in error in the Superior Court of Cook county, by bill in chancery, to subject certain "merchandise and fixtures" alleged to be in the hands of plaintiff in error, for the payment of two promissory notes held by said bank. The basis of the action was the following instruments in writing:

"*Know all men by these presents,* That I, Isidor Cohnfeld, of the city of New York, party of the first part, for and in consideration of the sum of one dollar, lawful money of the United States, to me in hand paid, at or before the ensealing and delivery of these presents, by Ferdinand E. Halle, of Chicago, of the second part, the receipt whereof is hereby acknowledged, have bargained and sold, and by these presents do grant and convey, unto the said party of the second part, his executors, administrators and assigns, all the merchandise and fixtures contained in the store Nos. 138 and 140 Wabash avenue, Chicago, Illinois, was (now) in possession of the party of the second part for account of the party of the first part: To have and to hold the same unto the said party of the second part, his executors, administrators and assigns, forever, as

security, nevertheless, for the payment of certain promissory notes made by the party of the second part to me, for my accommodation, and not otherwise.

"In witness whereof I have hereunto set my hand and seal the third day of November, in the year 1887.

"Signed, sealed and delivered in the presence of

ISIDOR COHNFELD,   [seal.]<br>Per Joseph Perriam, <i>Att'y</i>."

"NEW YORK, <i>3d November, 1887.</i>

"Received from Isidor Cohnfeld a bill of sale, dated 3d November, 1887, as security for certain promissory notes made by me to said Isidor Cohnfeld, for his accommodation, and not otherwise. The following is a memorandum of said notes: One due November 5, 1887, for $3856.17; one due December 2, 1887, for $4378.59; one due December 4, 1887, for $5385.47.                         F. E. HALLE."

The bill alleges that the two notes first mentioned in the foregoing receipt were discounted by said bank for said Cohnfeld, and remain in its hands wholly unpaid, and that it had notified said Halle of that fact, requesting him to hold said "merchandise and fixtures" mentioned in said bill of sale for the payment of the same, but was informed by him that he already sold them to the firm of Ascher, Barnard & Co.; that both he and said firm refused to inform said bank as to the particulars of such sale, but complainant is informed that under a pretended sale said "merchandise and fixtures" were disposed of to said firm, which claims to have executed promissory notes therefor, and that the same have been discounted by said Halle; that said Halle refused to account for said notes, or apply the same towards the payment of the indebtedness held by said complainant; that said sale was only colorable, and made for the purpose of placing said property beyond the reach of complainant, and to enable said Halle to control the same, or its proceeds, for his own benefit. Halle, Ascher, Barnard & Co., Cohnfeld, and the holder of the

third note mentioned in said receipt, were made defendants.
The bill prays that Halle be ordered to furnish complainant
an inventory of said property, with the value thereof; if sold,
the terms of sale, in whose possession it was, and what had
been done with the avails. It charged collusion between Halle
and Ascher, Barnard & Co. in concealing the property, and
preventing it from being applied in payment of said notes;
asks that an account be taken of the amount due on the notes
held by said bank, and that a lien be declared in its favor upon
said property, and that said Halle be directed to sell the same
for its benefit, and the proceeds applied in payment of said
notes; that if the court finds said property has been sold in
fraud of complainant's rights, the purchaser be compelled to
restore it to complainant, or account to it for the value there-
of; that Halle and Cohnfeld be decreed to pay said notes, and
for that purpose to apply said property, or the value thereof,
so held in trust by said Halle.

A general demurrer to the bill by Halle and Ascher, Bar-
nard & Co. was filed, and sustained by the Superior Court,
the bill being dismissed at complainant's costs. On appeal,
the Appellate Court reversed that decree and remanded the
cause. (See 30 Ill. App. 11.) Subsequently, on bill, answer,
replication and proofs, a hearing was had in said Superior
Court, and a decree entered dismissing the bill as to Ascher,
Barnard & Co., but finding the facts as to the execution, deliv-
ery and discounting of said notes, and the execution of said bill
of sale and receipt, as alleged in the bill, and that said notes
remained wholly unpaid; that said Halle had sold said "mer-
chandise and fixtures" to Ascher, Barnard & Co. for $7143.38,
for which the latter had executed promissory notes, payable
to said Halle, of the date of said sale, November 5, 1887, due
in three, six and nine months from date, the first for $1323.49,
the second for $2909.94, and the third for $2909.95, all of
which had been paid at maturity to said Halle. The de-
cree further recites: "The court further finds that the said

$7143.38, the proceeds of said sale, are now in the hands of said defendant, Ferdinand E. Halle, as a trust fund, who has not kept said money separate and apart from, but has mixed the same with, his other money, and has used the same in his business, and has received the use thereof, for which use and profit he failed to account, and is liable to the complainant for the same, with interest thereon computed at annual rests, from the receipt thereof; that the money so received by Halle constituted a trust fund for the payment of said three notes, in the order in which they severally matured; that the said two notes held by said bank are entitled to payment out of the proceeds of said trust fund, in full, before the payment of said third note." It finds the amount due complainant on the notes held by it, and decrees payment thereof by Cohnfeld and Halle, and awards execution against them "as at law."

Complainant below prosecuted a writ of error to the Appellate Court, and urged as a ground of reversal that said decree did not specifically direct the defendant, Halle, to pay to the complainant, or to pay into court, the said fund decreed by the court to be a trust fund in his hands, but only awarded to the complainant a general execution for the amount due it. In that court Halle assigned as cross-errors that there was no equity in the bill, and that the decree was against the evidence, and contrary to equity, etc. The Appellate Court reversed the decree of the Superior Court and remanded the cause, with directions to order Halle to pay the amount found to be in his hands, to the complainant. From that judgment plaintiff in error prosecutes this writ of error, and now urges his cross-errors assigned in the Appellate Court, and also assigns for error, here, the reversal of the decree of the Superior Court by the Appellate Court.

Messrs. KRAUS, MAYER & STEIN, for the plaintiff in error:

As a matter of right, the decree should be in favor of Halle, and the bill should have been dismissed. Even assuming a

trust to have existed, the money derived from the goods, having been mixed with defendant's other funds, can not be specifically recovered. *School Trustees* v. *Kirwin*, 25 Ill. 73; *Kirby* v. *Wilson*, 88 id. 566; *Clapp* v. *Emery*, 98 id. 523; *Doyle* v. *Murphy*, 22 id. 502; *Steele* v. *Clark*, 77 id. 471; *Taylor* v. *Turner*, 87 id. 296; *Weer* v. *Gand*, 88 id. 490; *Ferris* v. *Van Vechten*, 73 N. Y. 113; *Thompson's Appeal*, 22 Pa. St. 16; *Lathrop* v. *Bampton*, 31 Cal. 17; *Goodell* v. *Buck*, 66 Me. 514; *Johnson* v. *Ames*, 11 Pick. 172; *Savings Bank* v. *First Nat. Bank*, 15 Fed. Rep. 858; *Trecothic* v. *Austin*, 4 Mason, 16; *Bank of Commerce* v. *Russell*, 2 Dill. 215; *In re Janeway*, 4 Nat. Bankruptcy Reg. 100; *In re Carriage Manf. Co.* 12 id. 293; *Union Nat. Bank* v. *Goetz*, 138 Ill. 127.

There being no trust cognizable in equity, the proper remedy was at law, instead of in equity, for the value of these goods, recoverable by action of assumpsit for money had and received. *Taylor* v. *Turner*, 87 Ill. 296; *Phipps* v. *Conant*, 30 Vt. 277; *Catlin* v. *Birchard*, 13 Mich. 111; *Machine Works* v. *Coquillard*, 26 Ill. App. 516; *Hall* v. *Marston*, 17 Mass. 575; *Lewis* v. *Sawyer*, 44 Me. 337; *Alderson* v. *Ennor*, 45 Ill. 128; *Allen* v. *Stenger*, 74 id. 120; *McLain* v. *Watkins*, 43 id. 24; *Drovers' Nat. Bank* v. *O'Hare*, 119 id. 646.

Execution is the proper method of enforcing the decree of the court below in this case.

A specific order that defendant pay over the sum decreed to plaintiff is neither necessary nor proper, because it is discretionary with the court below whether it will enforce its decree by specific order to pay money over, or by execution.

Even if a specific order to pay over is proper, a reversal of the decree was not necessary to obtain it. It can be secured on application of the plaintiff to the court below, and the right so to secure it is not prejudiced by the order of execution.

Before asking an order specifically directing defendant to pay over the fund, plaintiff must show a *bona fide* effort, without success, to obtain the money by execution.

The relation which the law implies between trustee and *cestui que trust*, in the absence of some deed or sealed promise executed by the trustee declaratory of the trust, is that of simple contract debtor and creditor.  *Adey* v. *Arnold*, 2 D., M. & G. 432; 1 Perry on Trusts, sec. 260; *Jenkins* v. *Robertson*, 1 Eq. 123; *Holland* v. *Holland*, L. R. 4 Ch. 449; 1 Lewin on Trusts, sec. 206; *Lathrop* v. *Bampton*, 31 Cal. 17.

Mr. E. A. OTIS, and Mr. WALTER MATTOCKS, for the defendant in error:

A court of equity has jurisdiction of cases for the enforcement of trusts.  *Constant* v. *Matteson*, 22 Ill. 546; Perry on Trusts, secs. 827, 824, 825; 2 Lewin on Trusts, 977, 979.

As to the power of a court of equity to enforce its order by attachment, see *Wightman* v. *Wightman*, 45 Ill. 167; *Chew's Appeal*, 44 Pa. St. 247; *Andrews* v. *Andrews*, 69 Ill. 609; *O'Callaghan* v. *O'Callaghan*, id. 552.

Mr. JUSTICE WILKIN delivered the opinion of the Court:

The first point made by counsel for plaintiff in error is, that the Superior Court erred in holding that the "merchandise and fixtures" mentioned in said bill of sale were transferred to him by Cohnfeld in· trust, to pay said promissory notes.  It is said in 4 Kent's Commentaries, page 348: "Collateral securities given by a debtor to his surety are considered as trusts, for the better security of the creditor's debt, and chancery will see that their intention be fulfilled."  Also, in 1 Story's Equity Jurisprudence, section 499: "It is generally understood that the surety holds all securities in trust, not only for the other sureties, but for the creditor also, until the debt is paid."  And again, in section 638: "If a principal has given any securities or other pledges to his surety, the creditor is entitled to all the benefit of such securities or pledges in the hands of the surety, to be applied in payment of his debt."  In *Pratt* v. *Adams*, 7 Paige, 624, the chancellor said:

"And it has been settled by a long course of judicial decisions, that where a person standing in the situation of indorser or surety is furnished or provided by the principal debtor with a fund, or with collateral security for such a purpose, the creditor is, in equity, entitled to have it applied in satisfaction of, the debt," in support of which he cites many authorities. We know of no exception to the rule thus announced, and there is therefore no occasion for referring to the numerous authorities to the same effect. While Halle was an accommodation maker of the notes to secure the payment of which he held the property in question, on the facts of the case we think the principle announced in those authorities is applicable here.

That the bill of sale by Cohnfeld to Halle, of November 3, 1887, and the receipt back by the latter, show conclusively that the "merchandise and fixtures" therein mentioned were placed in the hands of Halle to secure the payment of the notes described in the bill and decree, is past controversy. To allow parol proof to show that the parties to those instruments intended otherwise, would be to violate the well known rule of evidence that the terms of a valid written contract can not be contradicted or varied by proof *aliunde*. Neither does the evidence in this record, fairly considered, tend to show a different intention from that expressed in the writings. It is then contended, that although the bill presented a good cause of action, yet when the proof showed that the trustee, Halle, had sold the trust property to innocent purchasers, and had mixed the proceeds of such sale with his own funds, as was found by the decree, the bill should have been dismissed. As a sequence to this last proposition it is insisted that the proper remedy by the complainant was at law, for the value of those goods, as for money had and received. An attempt is made to give strength to this position by assuming that the decree of the Superior Court finds there was no "*willful conversion or tortious mixture*" of the trust fund on the part of Halle. The decree finds that he had in his hands the proceeds of the sale, as a

trust fund; also, that he has not kept it separate and apart from, but has mixed it with, his other moneys, *and has used the same in his business*, etc.   Can a trustee mix trust funds with his own, rightfully?   The decree in this case finds what the trustee did, and the law pronounces that conduct wrongful, because it imperatively forbids the mixing of the trust funds with his own, and says, if he does so, the *cestui que trust* may follow the trust fund and claim every part of the blended property, unless the trustee can identify his own.   (Perry on Trusts, 447.)   It would be a travesty upon equity to say that a trustee can defeat the jurisdiction of a court of chancery to enforce the application of a trust fund to the purposes of the trust, by appropriating that fund to his own private use.   By the findings in the decree, when this bill was filed the proceeds of the sale to Ascher, Barnard & Co. were a distinct and separate fund, evidenced by certain promissory notes which were afterward paid to the trustee.   Can it be said that by abusing his trust in destroying the identity of that fund,— that, too, in the face of a chancery proceeding seeking to reach the fund and compel him to execute his trust,—he can oust the court of jurisdiction, and relegate the *cestui que trust* to a court of law, there to recover the value of the goods?

It need scarcely be said there is no similarity between this case and *National Bank* v. *Goetz, School Trustees* v. *Kerwin* and *Taylor* v. *Turner,* cited by counsel for plaintiff in error. Here was an express trust.   The fund is still in the hands of the trustee.   No one is interested in it except himself and the *cestui que trust.*   There is no attempt even to enforce a lien upon his general assets.   He is simply asked to pay over the money in discharge of his trust.

It is somewhat surprising that *Taylor* v. *Turner,* 87 Ill. 296, should be thought to give support to the position that a court of equity has no jurisdiction in this case.   Bailments have always been understood to fall within the exception to the general rule that matters of trust and confidence are exclu-

sively cognizable in courts of equity, it being considered that they are remedial in courts of law by an action of assumpsit for money had and received.    (3 Blackstone's Com. 432; 2 Story's Eq. Jur. sec. 962.)    *Taylor* v. *Turner* simply decides that the facts in that case established the relation of bailor and bailee, and that the remedy at law being complete, it should have been pursued.    We have already seen that the relation of Halle to the property conveyed to him by Cohnfeld was that of trustee, pure and simple,—as much so as though it had been conveyed to him as a third party, to secure said notes.    The bill was filed to reach, first, the trust property itself, and if that could not be done, then to compel the application of the proceeds according to the terms of the trust. Manifestly, to accomplish this there was no remedy at law. *Sargent* v. *Howe et al.* 21 Ill. 149.

It would seem to follow, necessarily, from the foregoing, that we should concur in the conclusion of the Appellate Court that it was error in the Superior Court to refuse to order the trustee to pay over the money in his hands to the complainant in the bill.    The decree, as it stands, is certainly illogical, if not contradictory of itself.    It gives the complainant its remedy, in equity, to the extent of establishing the trust, and fixing the trust fund in the hands of the trustee, but refuses him the aid of a court of chancery to compel the trustee to execute his trust.    Although the trustee has in his hands $7143.38 belonging to the complainant, yet, under this decree, unless that fund can be reached by an execution at law, the trustee may keep it in defiance of his trust.    Certainly that can not be the law.    Under the well settled rules of chancery practice, on the facts found by the Superior Court the complainant was entitled to an order on the defendant, Halle, requiring him to pay the funds in his hands to the complainant on the notes held by it.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*